BEN F. WORTHINGTON v. WILLIAM ANDERSON BYNUM

AND

JESSE COGDELL, JR. v. WILLIAM ANDERSON BYNUM

No. 125A81

(Filed 4 May 1982)

**Rules of Civil Procedure § 59— new trial on ground damages awarded excessive— no abuse of discretion**

   A trial judge's *discretionary* order pursuant to G.S. 1A-1, Rule 59 for or against a new trial upon *any* ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown. Therefore, the Court of Appeals erred in reversing a Rule 59 order by using the standard in

*Howard v. Mercer*, 36 N.C. App. 67, 243 S.E. 2d 168 (1978) to find the verdicts for damages arising out of a motor vehicle accident were "within the maximum limits of a reasonable range." To the extent that *Howard v. Mercer* attempts to define what a reversible abuse of discretion is under Rule 59(a)(6), it is overruled. Further, the Court of Appeals erred in concluding that there was "no evidence to support or suggest" the existence of adequate grounds for the trial judge's exercise of his discretion to grant defendant's motion for a new trial.

Justice MITCHELL did not participate in the consideration or decision of this case.

Justice CARLTON concurring.

Justice MEYER *joins in this concurring opinion.*

Justice BRITT dissenting.

APPEAL by the defendant pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals, (*Judge Becton*, with *Judge Whichard* concurring, and *Judge Robert Martin* dissenting), reported at 53 N.C. App. 409, 281 S.E. 2d 166 (1981). In a 2-1 decision, the Court of Appeals reversed an order by *Judge Peel*, entered at the 12 May 1980 Civil Session of Superior Court, PITT County, granting the defendant's motion under G.S. 1A-1, Rule 59, to set aside the jury verdicts for the plaintiffs and award a new trial.

Plaintiffs Worthington and Cogdell were passengers in a vehicle which collided with another vehicle driven by defendant Bynum on 23 May 1977. Plaintiffs subsequently filed separate complaints against defendant regarding their personal injuries arising out of the accident. Plaintiff Worthington sought $250,000 in compensatory damages, and plaintiff Cogdell likewise sought a recovery of $200,000. The two cases were consolidated for trial. Defendant's negligence in the tragic occurrence was stipulated.[1] The only issue for the jury's determination was what amount of damages the plaintiffs were entitled to recover. Defendant was represented by counsel at trial, but he did not personally appear in court during the proceedings.

---

1. Defendant was highly intoxicated at the time of the accident. A breathalyzer test administered to him three hours after the wreck showed defendant's blood alcohol content to be .21 percent. Prior to the trial of these civil cases, defendant had pleaded guilty to the criminal charges of failure to stop at a stop sign and death by motor vehicle. [The driver of the car in which plaintiffs were riding was killed in the collision.]

For five days, plaintiffs presented evidence to the jury about the nature and extent of their injuries. Six medical experts testified for plaintiffs. Defendant did not offer independent evidence at trial; however, his counsel did elicit evidence through the cross-examination of plaintiffs' witnesses.

After receiving instructions from the court, the jury deliberated for thirty minutes and returned verdicts against defendant of $175,000 for plaintiff Worthington and $150,000 for plaintiff Cogdell. Defendant thereupon moved, pursuant to Rule 59(a)(5), (6) and (7) of the Rules of Civil Procedure, for the trial court to set aside the verdicts and award a new trial in both cases. Judge Peel took the matter under advisement for a few days. He then heard arguments by counsel on the motion on 22 May 1980. At the conclusion of the hearing, Judge Peel stated the following:

> I have got a bunch of notes I made last night that I took from the evidence.
>
> Gentlemen, I don't intend to catalog, but time and again I tried to instruct that jury to disregard things that seemed to me to be improper that kept coming up. It was an extremely volatile situation. I am satisfied that the jury completely disregarded many of my instructions. I. don't understand that in view of all the evidence. It is my opinion that the verdict in each of the cases was excessive and I am, therefore, ordering Mr. Gaylord to prepare an order preparing a new trial as to each plaintiff. [Record at 245.]

Defendant's counsel, Mr. Gaylord, thereupon prepared an order granting the Rule 59 motion, and Judge Peel signed it on 27 May 1980. In pertinent part, that order provided as follows:

> And it being made to appear to the Court and the Court in *its considered discretion* being of the opinion that the Motion filed by the defendant in each case under Rule 59 of the North Carolina Rules of Civil Procedure should be allowed and granted . . .
>
>         .  .  .  .
>
> NOW, THEREFORE, IN THE *DISCRETION* OF THE COURT, IT IS ORDERED, ADJUDGED AND DECREED:

FIRST: That the Motion made by defendant in each case pursuant to the provisions of Rule 59 of the North Carolina Rules of Civil Procedure be and the same is hereby granted.

SECOND: That the issue of damages in each of these cases and as answered by the jury is hereby set aside and a new trial is granted defendant in each case as to the issue of damages. [Record at 250-51 (emphases added).]

Plaintiffs excepted to the entry of the foregoing order and sought review in the Court of Appeals. The Court of Appeals, in an opinion by Judge Becton, reversed the trial court's grant of defendant's motion for a new trial and remanded the cause for entry of judgment in accordance with the jury verdicts. Defendant appeals from that decision.

*James, Hite, Cavendish & Blount, by M. E. Cavendish and Marvin Blount, Jr., for plaintiff-appellees.*

*Gaylord, Singleton & McNally, by L. W. Gaylord, Jr., for defendant-appellant.*

COPELAND, Justice.

A single question is presented for our review: Did the Court of Appeals err in reversing Judge Peel's order for a new trial? We hold that it did and reverse.

Defendant's counsel moved for a new trial upon the grounds that the jury manifestly disregarded the court's instructions, that the jury awarded excessive damages under the influence of passion and prejudice, and that the evidence was insufficient to justify the verdict or that the verdict was contrary to law. G.S. 1A-1, Rule 59(a)(5), (6) and (7). Judge Peel acknowledged the existence of those grounds in his oral ruling upon defendant's motion in open court. However, Judge Peel also said that he did not intend "to catalog" all of his reasons and expressed his opinion that the entire situation had been "extremely volatile." The nature of Judge Peel's ruling in defendant's favor was subsequently clarified in the written order which, after *reciting* defendant's grounds for the motion, stated that the court was awarding a new trial as a matter of "its considered discretion" (and thus not as a matter of law). This fact is significant for it controls the scope of our review of Judge Peel's action.

It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge. *Goldston v. Chambers*, 272 N.C. 53, 59, 157 S.E. 2d 676, 680 (1967); *see e.g., Bryant v. Russell*, 266 N.C. 629, 146 S.E. 2d 813 (1966); *Robinson v. Taylor*, 257 N.C. 668, 127 S.E. 2d 243 (1962); *Dixon v. Young*, 255 N.C. 578, 122 S.E. 2d 202 (1961); *Caulder v. Gresham*, 224 N.C. 402, 30 S.E. 2d 312 (1944). The legislative enactment of the Rules of Civil Procedure in 1967 did not diminish the inherent and traditional authority of the trial judges of our state to set aside the verdict whenever in their sound discretion they believe it necessary to attain justice for all concerned, and the adoption of those Rules did not enlarge the scope of appellate review of a trial judge's exercise of that power. *Britt v. Allen*, 291 N.C. 630, 634-35, 231 S.E. 2d 607, 611-12 (1977); *see also Insurance Co. v. Chantos*, 298 N.C. 246, 253, 258 S.E. 2d 334, 338-39 (1979) (Huskins, J., dissenting). The principle that appellate review is restricted in these circumstances is so well established that it should not require elaboration or explanation here. Nevertheless, we feel compelled by the Court of Appeals' disposition of the case before us to restate and reaffirm today the basic tenets of our law which would permit only circumscribed appellate review of a trial judge's discretionary order upon a Rule 59 motion for a new trial. Those tenets have been competently set forth in innumerable prior opinions of this Court, and, for instructive purposes, we provide the following sampling therefrom.

In *Settee v. Electric Ry.*, 170 N.C. 365, 367, 86 S.E. 1050, 1051 (1915), the Court evinced a positive hesitancy to review such discretionary rulings by the trial court except in rare cases:

> While the necessity for exercising this discretion, in any given case, is not to be determined by the mere inclination of the judge, but by a sound and enlightened judgment in an effort to attain the end of all law, namely, the doing of even and exact justice, we will yet not supervise it, except, perhaps, in extreme circumstances, not at all likely to arise; and it is therefore practically unlimited.

In *Bird v. Bradburn*, 131 N.C. 488, 489, 42 S.E. 936, 937 (1902), the Court espoused several sound reasons for leaving the discre-

tionary power to set aside a verdict almost exclusively in the hands and supervision of the judge presiding over the trial:

> The power of the court to set aside the verdict as a matter of discretion has always been inherent, and is necessary to the proper administration of justice. The judge is not a mere moderator, but is an integral part of the trial, and when he perceives that justice has not been done it is his duty to set aside the verdict. His discretion to do so is not limited to cases in which there has been a miscarriage of justice by reason of the verdict having been against the weight of the evidence (in which, of course, he will be reluctant to set his opinion against that of the twelve), but he may perceive that there has been prejudice in the community which has affected the jurors, possibly unknown to themselves, but perceptible to the judge—who is usually a stranger—or a very able lawyer has procured an advantage over an inferior one, an advantage legitimate enough in him, but which has brought about a result which the judge sees is contrary to justice. In such, and many other instances which would not furnish a legal ground to set aside the verdict, the discretion reposed in the trial judge should be brought to bear to secure the administration of exact justice.

In *Brink v. Black*, 74 N.C. 329, 330 (1876), the trial judge had set aside the verdict, "because in his opinion it was against the weight of the evidence," and had granted a new trial. The only question presented to our Court was whether review of the judge's order was available. Justice Reade answered that:

> When a Judge presiding at a trial below grants or refuses to grant a new trial because of some question of "law or legal inference" which he decides, and either party is dissatisfied with his decision of that matter of law or legal inference, his decision may be appealed from, and we may review it. But when he is of the opinion that, considering the number of witnesses, their intelligence, their opportunity of knowing the truth, their character, their behavior on the examination, and all the circumstances on both sides, the weight of the evidence is clearly on one side, how is it practicable that we can review it, unless we had the same advantages? And even if we had, we cannot try facts.

In *Edwards v. Upchurch*, 212 N.C. 249, 250, 193 S.E. 19 (1937), the Court reversed the lower court's failure to set aside the verdict and order a new trial and said that the trial judge had a *manifest duty* to exercise such power to prevent injustice "when in his opinion the verdict is not supported by the evidence or is against the weight of the evidence."

In *Boney v. R.R.*, 145 N.C. 248, 250, 58 S.E. 1082, 1083 (1907), our Court stated that the trial judge, "who heard the evidence," had the "corrective power" to set aside the verdict if he thought it was excessive even though "[t]he amount of damages was a matter of fact of which the jury were the judges."

In sum, it is plain that a trial judge's *discretionary* order pursuant to G.S. 1A-1, Rule 59 for or against a new trial upon *any* ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown. *See also Scott v. Trogden*, 268 N.C. 574, 151 S.E. 2d 18 (1966); *Sherrill v. Boyce*, 265 N.C. 560, 144 S.E. 2d 596 (1965); *Walston v. Greene*, 246 N.C. 617, 99 S.E. 2d 805 (1957); *Frye & Sons, Inc. v. Francis*, 242 N.C. 107, 86 S.E. 2d 790 (1955).

We have cited many decisions of this Court in support of this sound and settled proposition in order to demonstrate two other points which are pertinent to the case at bar. First, our Court has had many opportunities, if it were so inclined, to formulate a "precise" test for determining when an abuse of discretion has occurred in the trial judge's grant or denial of a motion for a new trial. Second, our Court has not, however, found it logically necessary or wise to attempt to define what an abuse of discretion might be in the abstract concerning any ground upon which a new trial may be granted.[2] For well over one hundred years, it has been a sufficiently workable standard of review to say merely that a manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an

---

2. It would be practically impossible to fashion a rule which could generally pinpoint where a trial judge's discretion in any matter ends and an abuse thereof begins. This was recognized long ago in *Armstrong v. Wright*, 8 N.C. 93, 94 (1820): "When we ask what the legal discretion is, we are as much at a loss as we were before the definition to declare the rules or laws by which the discretion shall be regulated. *To prescribe fixed rules for discretion is at once to destroy it.*" (Emphases added.)

abuse bearing that heavy burden of proof. The error in the Court of Appeals' decision in the instant case lies in its failure to apply this standard of review strictly and correctly.

In the first place, the Court of Appeals improperly subjected Judge Peel's discretionary order to much broader appellate scrutiny, in one respect, than that previously permitted in our jurisdiction. The Court of Appeals reversed the Rule 59 order in part because it found that the damages awarded to plaintiffs were not excessive since the amounts of "both verdicts were clearly within the maximum limits of a reasonable range." 53 N.C. App. at 414, 281 S.E. 2d at 171. In so doing, the Court of Appeals relied upon a prior opinion of its Court, *Howard v. Mercer*, 36 N.C. App. 67, 243 S.E. 2d 168, *discretionary review granted*, 295 N.C. 466, 246 S.E. 2d 9 (1978) (petition later withdrawn on defendant's motion), which had announced and applied the foregoing federal test for determining whether an abuse of discretion has occurred in the grant of a new trial under G.S. 1A-1, Rule 59(a)(6). *See Taylor v. Washington Terminal Co.*, 409 F. 2d 145 (D.C. Cir.), *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed. 2d 85 (1969). This federal precedent is, of course, not binding upon this Court in an interpretation of our own Rules of Civil Procedure, and it would serve no purpose to engage in great debate over the various policies which might or might not favor the adoption of a specific standard to evaluate and limit a trial judge's discretionary power to grant a new trial if he believes the jury has awarded inadequate or excessive damages. It suffices to say that the overwhelming precedent of this Court (see *supra*) discloses no compelling reason or need for the implementation of such a rule in North Carolina. Moreover, we are not persuaded that the appellate use of a vague test to measure the "reasonable range" of a given verdict's amount would provide a more effective, consistent or precise method of determining whether a trial judge has exceeded the bounds of discretion in the grant or denial of a new trial (see note 2, *supra*). Consequently, we overrule *Howard v. Mercer, supra*, to the extent that it attempts to define generally what a reversible abuse of discretion is under Rule 59(a)(6), and we hold that the Court of Appeals should not have applied that definition to find an abuse of discretion on Judge Peel's part in this case.

Secondly, the Court of Appeals erroneously concluded that there was "*no* evidence to support or suggest" the existence of

adequate grounds for Judge Peel's exercise of his discretion to grant defendant's motion for a new trial. *See* 53 N.C. App. at 418, 281 S.E. 2d at 173 (emphasis added). From our reading of the Court of Appeals' opinion, we are led to believe that that Court simply substituted what it considered to be its own better judgment concerning the need for a new trial in the case and did not strictly review the record for the singular cause of determining whether Judge Peel had clearly abused *his* discretion in that regard. It is true that plaintiffs presented much evidence which showed that their injuries from the accident were severe and substantial, and this evidence surely warranted a large recovery of damages by them. *See* 53 N.C. App. at 412-14, 281 S.E. 2d at 170-71. However, there was also evidence which suggested that a combined recovery of $325,000 for the plaintiffs was too much. For example, plaintiffs' total medical expenses were only $17,634.10, they did not lose any income during their absences from work, both continued to work for the same employer after their recovery and did not suffer a loss in pay or position due to the permanent, partial disabilities they received in the accident, and doctors testified that both plaintiffs had recovered well from their injuries, were experiencing little pain and should not have pain in the future. Viewed in this light, it seems that the jury awarded plaintiffs over $300,000 for pain, suffering and resulting disabilities. In these circumstances, we simply cannot say, as a matter of law, that Judge Peel went too far in finding that there was insufficient evidence to support the jury's award and that the award was too large. In addition, it is not inconceivable on this record that the jury awarded these damages "under the influence of passion or prejudice." G.S. 1A-1, Rule 59(a)(6). To start with, Judge Peel said that the trial had been "extremely volatile." Moreover, it must be remembered that this serious accident was caused by a drunk driver who did not even show up at trial. Thus, it is possible that the jury was trying to punish this absent defendant for his reprehensible conduct by over-compensating the innocent plaintiffs.[3] Finally, we find it practically impossible to second-guess Judge Peel about his belief that the jury must have disregarded many of his instructions in order to arrive at these

---

3. In this respect, we also note that, although the jury had listened to complex medical testimony for five days, they returned substantial verdicts against defendant in only thirty minutes.

verdict amounts. This is especially so since Judge Peel did not list what those instructions were. In any event, while we agree with the Court of Appeals that the loss of sexual function or teeth were proper elements of plaintiffs' damages,[4] the general rule is that a verdict which is contrary to the court's instructions can be set aside *even if* those instructions were "unsound in law." 66 C.J.S. New Trial §§ 68, 75 (1950). We therefore sustain Judge Peel's exercise of his discretionary power to order a new trial.

In conclusion, we note that the trial judges of this state have traditionally exercised their discretionary power to grant a new trial in civil cases quite sparingly in proper deference to the finality and sanctity of the jury's findings. We believe that our appellate courts should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity for a new trial. Due to their active participation in the trial, their first-hand acquaintance with the evidence presented, their observances of the parties, the witnesses, the jurors and the attorneys involved, and their knowledge of various other attendant circumstances, presiding judges have the superior advantage in best determining what justice requires in a certain case. Because of this, we find much wisdom in the remark made many years ago by Justice Livingston of the United States Supreme Court that "there would be more danger of injury in revising matters of this kind than what might result now and then from an arbitrary or improper exercise of this discretion." *Insurance Co. v. Hodgson*, 10 U.S. (6 Cranch) 206, 218 (1810). Consequently, an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice. We hold that this is not such a case.

For all the foregoing reasons, the decision of the Court of Appeals is reversed to the end that Judge Peel's original order for a new trial may be reinstated. The cause is remanded to the Court of Appeals for further proceedings not inconsistent with this opinion.

---

4. On re-trial, evidence of these matters should be admitted for the jury's evaluation and consideration.

Reversed and remanded.

Justice MITCHELL did not participate in the consideration or decision of this case.

Justice CARLTON concurring.

I concur in the result reached by the majority. I wish to add, however, that I do not necessarily agree that the damages awarded these plaintiffs were excessive. My vote is based on agreement with the majority that the trial judge should be entrusted with broad discretionary power in ruling on a Rule 59 motion. An appellate court, reviewing the case on the cold record before it, should not disturb an able trial judge's ruling on a discretionary matter merely because it believes some other award for damages would be more appropriate. Reversals of such rulings should occur only when it is clear that the trial judge manifestly abused his discretion.

I am sympathetic to the view expressed in dissent that a more specific standard of review would be preferable. The problem is that I have not seen a meaningful standard suggested. Until such time that someone can suggest a more meaningful standard than the nebulous one of determining whether an award was within "the maximum limit of a reasonable range," I would prefer to stay with the majority vote.

The only condition that I would place upon the exercise of the broad discretionary power approved by the majority would be to require the trial judge to specify the ground or grounds upon which his ruling is based. This requirement would amount to no real limitation of the trial judge's discretionary power and would, at the same time, enable appellate courts to determine more accurately whether an abuse of discretion has been committed.

Justice MEYER joins in this concurring opinion.

Justice BRITT dissenting.

I respectfully dissent from the majority opinion and vote to affirm the decision of the Court of Appeals.

The majority opinion begins with the premise that "it has been long settled in our jurisdiction that an appellate court's

review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge", citing numerous decisions of this court decided prior to 1 January 1970, the effective date of Chapter 1A of the General Statutes, the Rules of Civil Procedure. I agree that the quoted statement was the rule in this jurisdiction for more than 100 years. However, one of the objectives in the adoption of the new Rules of Civil Procedure was to update the operation of our courts in the trial of civil cases and, hopefully, to make them more efficient. *See generally* General Scope and Philosophy of the New Rules, 5 Wake Forest Intra. Law Rev. 1 (1969).

Very soon after the effective date of G.S. 1A, this court in *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970), in an opinion by Justice (later Chief Justice) Sharp, observed that our rules are modeled after the federal rules of civil procedure, and that "in most instances they are verbatim copies with the same enumerations." The court further stated that

> Since the federal and, presumably, the New York rules are the source of NCRCP, we will look to the decisions of those jurisdictions for enlightment and guidance as we develop "the philosophy of the new rules."

277 N.C. at 101.

Since virtually all appeals in civil cases in this state first go to the Court of Appeals, that court has found it necessary in many cases to interpret and apply the new rules of civil procedure without guidance or precedent from this court. Of course, this court has the "final word" if the case reaches it.

The Court of Appeals in the case at hand followed very closely the decision of that court in *Howard v. Mercer*, 36 N.C. App. 67, 243 S.E. 2d 168 (1978). As a member of the Court of Appeals at that time, I was the author of the opinion in *Howard*. While this court granted a petition for discretionary review, the petition was withdrawn on motion of the petitioner before a decision was rendered by this court. In *Howard*, the court pointed out that "a review of the law in North Carolina does not reveal a standard for determining what is a sufficient abuse of discretion to warrant

a reversal of a trial court's ruling on a Rule 59 motion in which a new trial was granted." The court then elected to adopt a standard established in *Taylor v. Washington Terminal Co.*, 409 F. 2d 145 (D.C. Cir.), *cert. denied*, 90 S.Ct. 93, 396 U.S. 835, 24 L.Ed. 2d 85 (1969), decided under Federal Rule 59 which is similar to North Carolina Rule 59. We quote from the opinion in *Taylor*:

> Where the jury finds a particular quantum of damages and the trial judge refuses to disturb its finding on the motion for a new trial, the two factors press in the same direction, and an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial. However, where, as here, the jury as primary fact-finder fixes a quantum, and the trial judge indicates his view that it is excessive by granting a remittitur, the two factors oppose each other. The judge's unique opportunity to consider the evidence in the living courtroom context must be respected. But against his judgment we must consider that the agency to whom the Constitution allocates the fact-finding function in the first instance — the jury — has evaluated the facts differently.
>
> In this jurisdiction particularly, District Court judges have given great weight to jury verdicts. They have stated that a new trial motion will not be granted unless the "verdict is so unreasonably high as to result in a miscarriage of justice," or, most recently, unless the verdict is "so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate."
>
> At the appellate level, in reviewing a trial judge's grant of a new trial for excessive verdict, we should not apply the same standard. The trial judge's view that a verdict is outside the proper range deserves considerable deference. His exercise of discretion in granting the motion is reviewable only for abuse. Thus we will reverse the grant of a new trial for excessive verdict only where the quantum of damages found by the jury was *clearly* within "the maximum limit of a reasonable range." 409 F. 2d at 148-149.

In *Howard*, the Court of Appeals concluded that the verdict was clearly within "the maximum limit of a reasonable range",

and that there was no appearance that the verdict was given under the influence of passion or prejudice; thereupon the court held that the trial judge abused his discretion in setting aside the verdict.

In the case at hand the majority concluded that the trial court awarded a new trial "as a matter of 'its considered discretion' (and thus not as a matter of law)." That being true it is clear that the trial court awarded a new trial under Rule 59(a)(6) for "excessive or inadequate damages appearing to have been given under the influence of passion or prejudice."

The majority concludes that while this court has had many opportunities to formulate a "precise" test for determining when an abuse of discretion has occurred "in the trial judge's grant or denial of a motion for a new trial", the court has not "found it logically necessary or wise to attempt to define what an abuse of discretion might be in the abstract concerning any ground upon which a new trial may be granted." Although I agree that this court has not formulated such a test, I do not agree that this court should not at this time establish a standard for reviewing this type of decision.

I fully agree with Judge Whichard's views expressed in his concurring opinion in the case at hand. He pointed out that *Howard* "establishes, as the standard for granting or denying a motion to set aside a verdict and order a new trial on the issue of damages, the test of whether the verdict was within the maximum limit of a reasonable range. If the verdict was within the maximum limit of a reasonable range, the motion should be denied. If not, the motion should be granted."

Applying the standard sought to be established in *Howard*, and followed by the Court of Appeals in the case at hand, Judge Becton meticulously enumerated the injuries sustained by plaintiffs and described the pain and discomfort they endured in receiving medical treatment. I agree that the verdicts were within the maximum limit of a reasonable range.

Judge Becton also addressed the concern that the conscientious trial judge indicated that errors of law had been committed during the trial. While that question is not presented, I agree with the Court of Appeals that it appears that any errors of law

were favorable to defendant, therefore, he is in no position to complain.

In my view, adoption of the standard discussed above would result in more even-handed justice to citizens of the various sections of North Carolina. The population of the counties of our state now vary from 3,975 in eastern, predominantly rural Tyrrell County to 404,270 in Piedmont, highly urbanized Mecklenburg County.[1] I believe that the standard would aid the appellate division in ascertaining that citizens from all areas of our state receive "the equal protection of the laws."

Finally, the majority suggests that in the case at hand "it is not inconceivable . . . that the jury awarded these damages 'under the influence of passion or prejudice' ", one of the grounds for awarding a new trial under Rule 59(a)(6). The record discloses that following the wreck in which plaintiffs were injured defendant's blood alcohol content was .21. Considering the carnage that intoxicated drivers are causing on the highways of our state, it is my hope that juries will never cease to view with some disfavor those who elect to drive motor vehicles while intoxicated.

---

1. *North Carolina Manual*, 1981, pp. 129-30.