LOUENE F. HORNE, Plaintiff v. CAROL VASSEY, Defendant

No. COA02-1041

(Filed 20 May 2003)

## 1. Evidence— photographs—automobile

The trial court did not abuse its discretion in a personal injury suit arising out of an automobile accident by allowing defendant to introduce into evidence photographs of plaintiff's automobile, because: (1) plaintiff verified that the photographs depicted her vehicle, that the photographs were made the day after the accident, and that plaintiff did not have her car repaired the same day as the accident; and (2) although plaintiff disputed the accuracy of the damage to her vehicle as portrayed in the photographs, such dispute was a matter of the weight to be accorded the exhibits and not their admissibility.

## 2. Trials— motion for new trial—extent of injuries

The trial court did not abuse its discretion in a personal injury suit arising out of an automobile accident by denying plaintiff's motion under N.C.G.S. § 1A-1, Rule 59 for a new trial, because: (1) contrary to plaintiff's assertions, the evidence in the present case regarding plaintiff's injuries was not unequivocal; (2) plaintiff's expert relied entirely upon plaintiff's statements to him concerning her medical history and her description of the collision in forming his medical opinion of the source and extent of plaintiff's injuries; (3) plaintiff's expert testified that it would be hard to sustain a significant injury in an accident where the rate of speed at impact was five miles per hour or less, and defendant testified that she was traveling at a rate no greater than one or two miles per hour when she rolled into plaintiff's automobile; and (4) plaintiff suffered from a multitude of pre-existing medical problems, and two physicians who examined plaintiff's neck following the accident found it to be supple and with a full range of motion.

Appeal by plaintiff from judgment entered 27 February 2002 by Judge Leon A. Stanback, Jr., in Wake County Superior Court. Heard in the Court of Appeals 16 April 2003.

*Brent Adams & Associates, by Brenton D. Adams, for plaintiff appellant.*

*Bailey & Dixon, L.L.P., by David S. Wisz, for defendant appellee.*

TIMMONS-GOODSON, Judge.

Louene Horne ("plaintiff") appeals from final judgment entered by the trial court upon a jury verdict finding that plaintiff was entitled to no recovery on her suit for personal injuries suffered in an automobile accident with Carol Vassey ("defendant"). The trial court further denied plaintiff's motion for a new trial. For the reasons stated herein, we conclude that the trial court committed no error in rendering its judgment.

The pertinent facts of the instant appeal are as follows: On 24 April 2000, plaintiff filed a complaint in Wake County Superior Court alleging that defendant drove her automobile in a negligent manner, resulting in a collision with plaintiff's vehicle. As a result of the collision, plaintiff alleged she suffered serious and permanent medical injuries.

Plaintiff's case came before the jury on 12 and 13 February 2002, at which time the following evidence was presented: Plaintiff testified that, in the early morning hours of 13 January 1999, she drove her automobile onto an exit ramp of Interstate 40 in Raleigh, North Carolina. While plaintiff was stopped at an intersection at the top of the exit ramp, defendant's vehicle struck the rear of plaintiff's automobile. The impact "jerked [plaintiff's] head and neck," and she experienced "pain [and] instant headache from the pain in [her] neck." Following the collision, plaintiff and defendant exchanged personal contact and insurance information, but did not summon law enforcement to the scene of the accident. Defendant promised to compensate plaintiff for the damage to her automobile. Plaintiff did not inform defendant of any personal injury, however, nor did plaintiff seek immediate medical attention for the pain she was experiencing. Later that afternoon, plaintiff visited her chiropractor, Dr. Holcomb, who examined and treated plaintiff's neck. Plaintiff testified that she suffered constant pain in her neck and head for the following four weeks, and that she was unable to return to work during this time because of her injuries. Plaintiff eventually stopped working "because it was too strenuous." According to plaintiff, she continues to suffer debilitating pain in her head and neck and remains unable to work. Moreover, according to plaintiff, her pain prevents her from performing daily household activities and interferes with her sleep.

Plaintiff submitted into evidence the deposition of Dr. Rudolph Maier, a neurologist who initially examined plaintiff on 26 February

HORNE v. VASSEY

[157 N.C. App. 681 (2003)]

1999. In Dr. Maier's opinion, plaintiff suffered a ten percent permanent disability to her entire body as a result of the 13 January collision. Dr. Maier stated that he relied upon plaintiff's statements to him concerning her medical history and description of the collision in reaching this opinion.

During cross-examination, plaintiff testified that after the collision, defendant "was concerned whether [she] was hurt" but that plaintiff assured defendant that she "thought she was okay" and did not need medical assistance. Plaintiff also admitted that she suffered from numerous medical problems, including hypertension, degenerative joint disease, osteoporosis, chronic anxiety and depression, and coronary artery disease. Plaintiff conceded that she also had a pre-existing shoulder injury for which she took "up to six Darvocet a day . . . without any relief," and that she had been treated for ongoing problems with her lower back since 1990. Several months before the collision, plaintiff was diagnosed with "chronic pain syndrome." Further, plaintiff was admitted to a hospital in May of 1999 after suffering a "mini-stroke." Contrary to plaintiff's representations of constant neck pain, an examining physician reported on 2 March 2000 that plaintiff's neck was "supple [and] non-tender." Another treating physician reported on 21 March 2000 that plaintiff's neck was "supple, [with] full range of motion."

Defendant testified that on 13 January 1999 she stopped behind plaintiff's automobile at the top of the exit ramp. Defendant "saw [plaintiff's] car move slightly, and I was prepared to follow out into the traffic. I took my foot off the brake and I rolled into the back of her car." According to defendant, her vehicle was traveling at a rate of speed of approximately one or two miles per hour at the point of impact. Defendant testified that there was no damage to her vehicle, but that the bumper of plaintiff's automobile "was pushed out of place by a few inches." When defendant asked plaintiff whether she "was all right," plaintiff responded, "Yes, I think so." Defendant spoke with plaintiff for ten minutes following the accident, during which time plaintiff did not mention any pain or discomfort, nor showed signs of any physical distress.

Upon consideration of the evidence, the jury found that plaintiff was entitled to no recovery from defendant, and the trial court entered judgment accordingly. Counsel for plaintiff moved for a new trial, which motion the trial court denied. From the judgment of the trial court, plaintiff appeals.

On appeal, plaintiff argues that the trial court erred in (1) allowing into evidence photographs of plaintiff's automobile; and (2) denying plaintiff's motion for a new trial. For the reasons stated herein, we conclude that these assignments of error have no merit, and we find no error in the judgment of the trial court.

**[1]** By her first assignment of error, plaintiff contends the trial court erred in allowing defendant to introduce into evidence photographs of plaintiff's automobile. Plaintiff argues that defendant failed to lay a proper foundation for introduction of this evidence, and that it was therefore improperly admitted. Plaintiff asserts that the improper admission of the photographs prejudiced her case, requiring a new trial.

At trial, counsel for defendant showed plaintiff four photographs labeled as Defendant's Exhibits 1-A, 1-B, 1-C and 1-D. The following exchange then occurred:

[DEFENSE COUNSEL]: Show you what I've marked as Defendant's Exhibit 1-A, 1-B, 1-C and 1-D, ask you to take a look at those and see if you can identify what they are.

[PLAINTIFF]: I believe this picture, me sitting in my car and Donna standing at the back, I believe that was taken in Angier. Is that what you wanted me—

Q: Are those, in fact, four pictures of your car showing how it looked?

A: That's my car, yes, sir.

Q: They were taken about the day after the accident?

A: Yes, sir.

Q: Those four pictures accurately show how your vehicle looked following this collision; is that correct?

A: No.

Q: How was that not correct?

A: It is not correct because there's no damage here. This was taken after the impact, after the car was repaired.

Q: So you had your car repaired the same day of the accident?

A: No, I did not.

Q: Let me understand this—

A: No, I did not have my car repaired the same day as the accident, but this doesn't show accurately what had happened. This was pushed up more here on the right side and the bumper was up against the trunk lid.

. . . .

This does not show as I remembered. I see here, where the bumper is pull[ed] out from the car, up—on the back panel here behind the back door because that's a four door—I don't remember, I don't have the car any longer. In fact, I didn't have it maybe two months after the accident or three before it was repossessed, but I don't remember this looking as if it had not been damaged. And this picture, the back, the bumper here, it shows it on the side and here where it was lifted, it doesn't show any damage here raising it up where it interfered with opening the trunk.

Q: How about the other two pictures that we have there?

A: This one, the back of the car shows the accident—the damage done to the impact, the bumper is moved from its original position and broken, the cover was broken in this picture.

Q: Which picture is that? Refer to the exhibit number. Can you refer to the exhibit number?

A: Yes, sir, C.

Q: So exhibit 1-C, so you agree in that one it accurately reflects the vehicle?

A: From this side, yes, sir, from the side view.

Q: How about 1-D?

A: In 1-D, you can see where the bumper is broken, you can see where the little space up above the bumper is, near the tail light is damaged, but it does not show the damage on the trunk as I remember it.

At the close of defendant's evidence, defendant moved to introduce the photographs of plaintiff's vehicle. The trial court admitted the photographs into evidence over plaintiff's objection. Plaintiff now argues that, because she testified that the photographs did not accurately portray the full extent of the damage to her automobile follow-

ing the accident, the photographs were not properly authenticated. We do not agree.

Generally speaking, photographs may be used to illustrate anything that a witness may competently describe in words. *See Smith v. Dean*, 2 N.C. App. 553, 563, 163 S.E.2d 551, 557 (1968). In order for a photograph to be admitted into evidence, the accuracy of a photograph must be demonstrated by extrinsic evidence that the photograph is a true representation of the scene, object or person it purports to portray. *See id.*

> "The correctness of such representation may be established by any witness who is familiar with the scene, object, or person portrayed, or is competent to speak from personal observation. . . . Whether there is sufficient evidence of the correctness of a photograph to render it competent to be used by a witness for the purpose of illustrating or explaining his testimony is a preliminary question of fact for the trial judge."

*Id.* (quoting *State v. Gardner*, 228 N.C. 567, 573, 46 S.E.2d 824, 828 (1948) (citations omitted). Testimony that the exhibit is a fair and accurate portrayal of the scene at the time of the accident is ordinarily sufficient to authenticate the exhibit. *See Thomas v. Dixson*, 88 N.C. App. 337, 344, 363 S.E.2d 209, 214 (1988). "Authentication does not, however, require strict, mathematical accuracy, and a lack of accuracy will generally go to the weight and not the admissibility of the exhibit." *Id.*; *Kepley v. Kirk*, 191 N.C. 690, 693, 132 S.E. 788, 790 (1926). "Where there is conflicting evidence as to the similarity of conditions at the time of the accident and at the time the photographs are made, the admissibility of the exhibits is a matter within the sound discretion of the trial judge." *Sellers v. CSX Transportation, Inc.*, 102 N.C. App. 563, 565, 402 S.E.2d 872, 873 (1991).

In the instant case, plaintiff verified that the photographs depicted her vehicle, and that the photographs were made the day after the accident. She further stated that she did not have the car repaired the same day as the accident. Plaintiff agreed that Exhibit 1-C, depicting the passenger-side of her vehicle, accurately showed the damage to the automobile. Plaintiff also testified that Exhibit 1-D was an accurate representation, with the exception of alleged damage to the trunk of the automobile. We conclude that the trial court did not abuse its discretion in admitting the photographs. Defendant clearly established that the photographs were of plaintiff's vehicle, and that they were made the day following the accident. Although

plaintiff disputed the accuracy of the damage to her vehicle as portrayed in the photographs, such dispute was a matter of the weight to be accorded the exhibits, not their admissibility. *See Sellers*, 102 N.C. App. at 565, 402 S.E.2d at 873. Because it was demonstrated that the photographs were true representations of plaintiff's automobile following the accident, the trial court did not abuse its discretion in admitting the photographs. We therefore overrule this assignment of error.

**[2]** By her second assignment of error, plaintiff argues that the trial court erred in denying her motion for a new trial. Plaintiff asserts that there was uncontroverted evidence that she sustained permanent injury and incurred medical expenses in the amount of $9,005.00 as a result of the collision caused by defendant. Plaintiff contends that the jury manifestly disregarded the evidence and the trial court's instructions such that the trial court was required to grant plaintiff a new trial. We disagree.

Under Rule 59 of the North Carolina Rules of Civil Procedure, a new trial may be granted where there is "[m]anifest disregard by the jury of the instructions of the court" or where the jury awards "[e]xcessive or inadequate damages . . . under the influence of passion or prejudice." N.C. Gen. Stat. § 1A-1, Rule 59(a) (2001). Whether to grant or deny a motion to set aside a jury verdict is in the sound discretion of the trial court. *See Albrecht v. Dorsett*, 131 N.C. App. 502, 505, 508 S.E.2d 319, 321 (1998). Thus, absent a manifest abuse of discretion, the trial court's ruling in this regard will not be disturbed. *See id*; *Coletrane v. Lamb*, 42 N.C. App. 654, 656, 257 S.E.2d 445, 447 (1979).

There is no question that "[i]t is the province of the jury to weigh the evidence and determine questions of fact." *Coletrane*, 42 N.C. App. at 657, 257 S.E.2d at 447. Moreover, as the finder of fact, the jury is "entitled to draw its own conclusions about the credibility of the witnesses and the weight to accord the evidence." *Smith v. Price*, 315 N.C. 523, 530-31, 340 S.E.2d 408, 413 (1986). The trial court must give the utmost consideration and deference to the jury's function as trier of fact before setting aside a decision of the jury. *See Albrecht*, 131 N.C. App. at 506, 508 S.E.2d at 322; *Coletrane*, 42 N.C. App. at 657, 257 S.E.2d at 447.

In the instant case, plaintiff introduced expert testimony by Dr. Maier, who testified that plaintiff suffered a ten percent permanent disability to her entire body as a result of the 13 January collision.

Plaintiff contends that this evidence was undisputed and that the jury's verdict was therefore inconsistent with the evidence and contrary to North Carolina law. In support of her argument, plaintiff cites the case of *Daum v. Lorick Enterprises*, 105 N.C. App. 428, 413 S.E.2d 559, *disc. review denied*, 331 N.C. 383, 417 S.E.2d 789 (1992). In *Daum*, the plaintiff-employee prevailed against the defendant-employer and supervisor in an action alleging intentional infliction of emotional distress and negligence, but the jury awarded the plaintiff damages in an amount far below the uncontroverted evidence submitted by the plaintiff. *Id.* at 431-32, 413 S.E.2d at 561. On appeal, this Court held that the plaintiff was entitled to a new trial on the issue of damages, because the jury arbitrarily ignored evidence of the employee's pain and suffering and her need for future medical expenses. *See id.*

Unlike *Daum*, the evidence in the present case regarding plaintiff's injuries was not unequivocal, plaintiff's assertions to the contrary. Although defendant presented no expert testimony to contradict the testimony of Dr. Maier, cross-examination revealed that Dr. Maier relied entirely upon plaintiff's statements to him concerning her medical history and her description of the collision in forming his medical opinion of the source and extent of plaintiff's injuries. Dr. Maier also testified that "it would be very hard to sustain a significant injury" in an accident where the rate of speed at impact was five miles per hour or less. Defendant testified that she was traveling at a rate no greater than one or two miles per hour when she "rolled into" plaintiff's automobile. Further cross-examination revealed that plaintiff suffered from a multitude of pre-existing medical problems, and that two physicians who examined plaintiff's neck following the accident found it to be supple and with a full range of motion. As credibility of the evidence is exclusively for the jury, "it was well within the jury's power to minimize or wholly disregard the testimony" given by Dr. Maier. *Albrecht*, 131 N.C. App. at 506, 508 S.E.2d at 322. We therefore hold that the trial court did not abuse its discretion in denying plaintiff's motion for a new trial, and we overrule this assignment of error.

In the judgment of the trial court, we find

No error.

Judges BRYANT and GEER concur.